**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Daniel D. Domenico**

Civil Action No. 1:25-cv-02059-DDD-STV

HOSSEIN BATOOIE,

    Petitioner,

v.

JUAN BALTAZAR, Warden, Aurora ICE Processing Center;
GEORGE VALDEZ, Acting Field Office Director, U.S. Immigration and
    Customs Enforcement;
MARKWAYNE MULLIN, Secretary, U.S. Department of Homeland
    Security; and
TODD BLANCHE, Acting Attorney General, U.S. Department of
    Justice,

    Respondents.[1]

---

**ORDER GRANTING WRIT OF HABEAS CORPUS**

---

Petitioner Hossein Batooie seeks a writ of habeas corpus directing his release from immigration detention. Docs. 1, 60. For the following reasons, his petition is granted.

**BACKGROUND**[2]

The petitioner is a sixty-year-old native and citizen of Iran. Doc. 1 at 1, 3; Doc. 24-1 at 3; Doc. 60 at 8. On August 4, 2000, he presented

---

[1]   To the extent that any of the original respondents has ceased to hold office during the pendency of this action, that party's successor "is automatically substituted as a party," and "any misnomer not affecting the parties' substantial rights must be disregarded." Fed. R. Civ. P. 25(d).

[2]   In this Order, all pinpoint citations to the record use the blue page number appended by the Court's Electronic Case Filing system at the top of each page, which may differ from a document's internal pagination.

- 1 -

himself at the Chicago, Illinois port of entry, and he was admitted to the United States on a visa that was valid until November 3, 2000, by which time he was required to marry his fiancée. Doc. 24-1 at 3. The petitioner's fiancée subsequently broke off their engagement, and he did not marry by the required date, nor did he depart the United States. *Id.*; Doc. 60 at 8-9.

The petitioner was raised as a Muslim, but he became interested in Christianity after entering the United States. Doc. 1 at 3-4; Doc. 60 at 8-9. In April 2003, he was baptized into the United Methodist Church, which is considered a crime punishable by death under Iranian law. Doc. 1 at 4; Doc. 60 at 9. On September 12, 2003, the petitioner filed an I-589 application for asylum, withholding of removal, and protection under the Convention Against Torture. Doc. 24-1 at 3-4; Doc. 60 at 9-11.

In October 2003, his application was referred to immigration court, and the petitioner was issued a Notice to Appear, which initiated removal proceedings and charged him with being deportable. Doc. 24-1 at 3-4, 9-10; Doc. 60 at 10-11. The respondents state that at an initial hearing, the petitioner admitted the allegations in the Notice to Appear and conceded that he is removable, as indicated by some ambiguous notations on a copy of the Notice to Appear, which were "written by the Immigration and Naturalization Service attorney, consistent with ordinary agency practice." Doc. 24-1 at 4. The petitioner acknowledges that he conceded his removability. Doc. 34 at 2.

A merits hearing was held on November 10, 2004. Doc. 24-1 at 4-5; Doc. 1 at 4; Doc. 60 at 12. After the hearing, the IJ issued a summary order by marking several checkboxes on a form. Doc. 1-1; Doc. 60 at 54-55. Those checkboxes indicate that (1) the petitioner's application for asylum was withdrawn; (2) his application for withholding of removal was granted; (3) his CAT application was withdrawn; and

(4) "[p]roceedings were terminated." Doc. 1-1. The IJ did not check the box indicating that "[t]he [petitioner] was ordered removed." *Id.* And the summary order does not indicate the country or countries to which withholding of removal was granted. *Id.* The order states that "[t]his is a summary of the oral decision entered on Nov 10, 2004," and "[i]f the proceedings should be appealed or reopened, the oral decision will become the official opinion in the case." *Id.*

The oral decision, unfortunately, does not provide any further specifics as to the outcome of the petitioner's removal proceedings. *See* Doc. 51-1. The oral decision confirms that the petitioner withdrew his applications for asylum and CAT protection and that the IJ granted withholding of removal, but like the summary order, the oral decision does not specify the country or countries to which removal was withheld. *Id.* at 3-4. The IJ stated on the record that the petitioner "has been out of status since November 3, 2000," *id.* at 2, but he did not expressly order removal or make an express finding that the petitioner is removable.

Other available records conflict as to whether an order of removal was issued in November 2004. An August 2006 database entry from the Executive Office for Immigration Review indicates that removal was not ordered. Doc. 54 at 3 ("FINAL DISP: NOT R/O DATE: 11/10/04"); Doc. 60 at 14-15. But at the time this case was filed in July 2025, the Executive Office for Immigration Review's Automated Case Information system indicated that "[t]he immigration judge ordered REMOVAL," with a November 10, 2004 decision date. Doc. 24-1 at 5.

After the November 2004 hearing at which withholding of removal was granted, the petitioner lived and worked in the United States for over twenty years. Doc. 1 at 1; Doc. 24-1 at 6; Doc. 60 at 4, 15. On June 22, 2025, Immigration and Customs Enforcement officers detained the petitioner for potential removal to a third country. Doc. 1 at 5;

Doc. 24-1 at 6; Doc. 60 at 4, 15. The petitioner was told that he is subject to a removal order. Doc. 1 at 5. On July 2, 2025, the petitioner filed an application for a writ of habeas corpus asserting that the respondents are unlawfully detaining him in the absence of a valid removal order.[3] Doc. 1.

ICE subsequently filed a motion in immigration court asking for clarification of the November 10, 2004 order. Doc. 35 at 6-7. On August 21, 2025, an IJ granted the motion to clarify and ordered, *nunc pro tunc* to November 10, 2004, that: (1) the petitioner be removed to Iran on the charge contained in the Notice to Appear; (2) removal to Iran is withheld; and (3) the original summary order's checkbox indicating that "[p]roceedings were terminated" is stricken. *Id.* at 33-34; *see also id.* at 1-4 (detailing procedural irregularities with the motion to clarify and subsequent order from the immigration court); Doc. 37; Doc. 60 at 57-58. The August 21, 2025 order states that:

> [DHS] moved the Court to clarify the summary order of the oral decision in this matter, dated November 10, 2004, because *it did not include an order of removal to a specific country* when granting the [petitioner]'s application for withholding of removal . . . . While the Court *did not order the [petitioner] be removed to a specific country*, this case was decided prior to the Board of Immigration Appeal's decision in <u>Matter of I-S- & C-S-</u>, 24 I&N Dec. 432, 434 (BIA 2008), which clarified that "when an Immigration Judge decides to grant withholding of removal, an explicit order of removal must be included in the decision." This is

---

[3]    The petitioner also filed a motion for a temporary restraining order enjoining the respondents from removing him from the United States or the District of Colorado while his habeas petition is pending. Doc. 4. A temporary restraining order was granted on July 3. Doc. 10; *see also* Doc. 25 (with respondents' consent, extending temporary restraining order pending further order of the Court).

> also likely why the Court "terminated" proceedings pursu-
> ant to 8 C.F.R. § 1240.12(c).

Doc. 35 at 33 (italics added).

The petitioner has appealed the August 21, 2025 order to the Board of Immigration Appeals. Doc. 41 at 3, 12-53. That appeal remains pending. Doc. 60 at 4, 17. The petitioner initially requested that "resolution of that agency appeal . . . should precede any decision on [his] habeas" petition. Doc. 51 at 2, 6 ("[I]t would be prudent for this Court to wait for a decision from the Board before rendering a final decision on the habeas."). But he has since requested that the Court hold a hearing on and consider the merits of his petition. Doc. 56. His original petition alleged violation of his Fifth Amendment due-process rights and violations of the Immigration and Nationality Act and its implementing regulations on the basis that the respondents are detaining him in the absence of a final order of removal. *See* Doc. 1 at 5-12. On February 10, 2026, the petitioner filed an amended petition alleging additional due-process violations on the basis that, among other things, his detention has become unreasonably prolonged with no significant likelihood of removal to a third country in the reasonably foreseeable future. *See* Doc. 60 at 18-51. The amended petition has now been fully briefed, *see* Docs. 63, 64, 66, and I have determined that no hearing is necessary, *see* Local Civ. R. 7.1(h) (motion may be decided without oral argument at court's discretion).

### LEGAL STANDARD

An application for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 "is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973); *see also McIntosh v. U.S. Parole Comm'n*, 115 F.3d 809, 811 (10th Cir. 1997).

Habeas corpus relief may be granted if the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Federal courts have habeas jurisdiction to hear statutory and constitutional challenges to immigration detention. *See Demore v. Kim*, 538 U.S. 510, 516-17 (2003); *Zadvydas v. Davis*, 533 U.S. 678, 687-88 (2001); *Sierra v. INS*, 258 F.3d 1213, 1217-18 (10th Cir. 2001).

## DISCUSSION

While removal proceedings are being adjudicated, a noncitizen may be detained under 8 U.S.C. § 1225 or 1226. *See Johnson v. Guzman Chavez*, 594 U.S. 523, 527-28, 533 (2021); *Jennings v. Rodriguez*, 583 U.S. 281, 287-89 (2018). If a noncitizen is ordered removed, he becomes subject to mandatory detention under 8 U.S.C. § 1231 during the ninety-day "removal period," which begins when the order of removal becomes "administratively final."[4] *See* 8 U.S.C. § 1231(a)(1)(B)(i); *Guzman Chavez*, 594 U.S. at 528, 533-34. If the noncitizen is not removed from the United States during the removal period, the government may in some circumstances continue to detain him under Section 1231 while it attempts to effectuate removal, but that detention may not be indefinite. *See* 8 U.S.C. § 1231; 8 C.F.R. § 241.4; *Guzman Chavez*, 594 U.S. at 528-29; *Zadvydas*, 533 U.S. at 688-701. Detention may continue only so long as removal is reasonably foreseeable. *Zadvydas*, 533 U.S. at 699. After six months of detention, if the noncitizen "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," the government must either "respond with

---

[4]    The other two triggers for the beginning of the removal period—a court order lifting a stay and release from non-immigration detention or confinement—are not at issue here. *See* 8 U.S.C. § 1231(a)(1)(B)(ii)-(iii).

evidence sufficient to rebut that showing," *id.* at 701, "or release the alien,"[5] *Guzman Chavez*, 594 U.S. at 529. *See also* 8 C.F.R. § 241.13.

The respondents contend that the petitioner's initial detention was proper under Section 1231 pursuant to an administratively final order of removal. Doc. 63 at 1 (citing Doc. 33 at 6-9; Doc. 37 at 1-2; Doc. 37-1; Doc. 39 at 3-5). Specifically, they assert that: (a) the original November 2004 order granting withholding of removal was an order of removal because it implicitly concluded that the petitioner is removable; and (b) even if no order of removal was issued in 2004, the August 2025 *nunc pro tunc* order is an administratively final order of removal because the petitioner waived his right to appeal from the 2004 proceedings. *See* Doc. 33 at 7-9; Doc. 39 at 3-5. The petitioner contends that no order of removal was issued in November 2004 and that the August 2025 order is not administratively final because his appeal to the BIA remains pending. *See* Doc. 34 at 1-6; Doc. 41 at 1-5; Doc. 60 at 28-29.

The August 2025 order is not administratively final because it is the subject of a pending appeal before the BIA.[6] Whether the November 2004 order was an order "concluding that the alien is deportable,"

---

[5]    The terms "alien" and "noncitizen" are synonymous in this context. *Nasrallah v. Barr*, 590 U.S. 573, 578 n.2 (2020).

[6]    *See* 8 U.S.C. § 1101(a)(47)(B) (order of removal becomes final "upon the earlier of—(i) a determination by the Board of Immigration Appeals affirming such order; or (ii) the expiration of the period in which the alien is permitted to seek review of such order by the Board of Immigration Appeals"); *Guzman Chavez*, 594 U.S. at 534-35 (when "there is nothing left for the BIA to do with respect to the removal order," the order is "administratively final"); *Luna-Garcia v. Holder*, 777 F.3d 1182, 1185 (10th Cir. 2015) (citing *Bennett v. Spear*, 520 U.S. 154, 178 (1997)), *abrogated on other grounds by Guzman Chavez*, 594 U.S. 523.

8 U.S.C. § 1101(a)(47)(A),[7] is less clear. But the IJ made no express find-
ing that the petitioner is removable. Based on my review of the unique
facts of this case, and guided by the available authorities, I must con-
clude that the November 2004 order was not an order concluding that
the petitioner is removable, and it therefore is not a final order of re-
moval.[8] Because there is no administratively final order of removal,

---

[7]   Section 1101(a)(47)(A) defines the term "order of deportation," which
is synonymous with "order of removal" in the immigration statutes. *Ri-
ley v. Bondi*, 606 U.S. 259, 267 (2025); *Luna-Garcia*, 777 F.3d at 1184
n.5; *Batubara v. Holder*, 733 F.3d 1040, 1042 n.1 (10th Cir. 2013) ("The
terms removable and deportable are synonymous.").

[8]   *See Riley*, 606 U.S. at 263, 268-69 (2025) (CAT order "is not a final
order of removal because it is not an order concluding that the alien is
deportable or ordering deportation" (internal quotation marks omitted)
(quoting *Nasrallah*, 590 U.S. at 582)); *Sosa-Valenzuela v. Gonzales*, 483
F.3d 1140, 1142-47 & n.3 (10th Cir. 2007) (no order of removal where
IJ's checkbox order "only stated that '[the noncitizen] be granted a
waiver of inadmissibility'" and "made no explicit finding of deportabil-
ity"); *Munoz Erazo v. United States*, 506 F. App'x 938, 939-40, 944 (11th
Cir. 2013) (where petitioner conceded removability and IJ "granted asy-
lum but never made an explicit finding of removability," BIA had no au-
thority to "issue an order of removal in the first instance" (citing *Sosa-
Valenzuela*, 483 F.3d at 1145)); *Mahecha-Granados v. Holder*, 324 F.
App'x 735, 737 (10th Cir. 2009) (order of removal where noncitizen "con-
ceded removability, and the IJ made an *express* finding that she is re-
movable" (emphasis added)); *Abrego Garcia v. Noem*, 811 F. Supp.
3d 741, 747-50, 754, 756-60 (D. Md. 2025) (no implied order of removal
where IJ granted withholding of removal but did not issue order of re-
moval or state country from which removal was withheld); *but see Sosa-
Valenzuela*, 483 F.3d at 1144 n.7 (waiver of inadmissibility "requires no
concession of deportability"); *Viracacha v. Mukasey*, 518 F.3d 511,
513-14 (7th Cir. 2008) (order withholding removal "supposes that the al-
ien is 'removable'" and is therefore an order of removal); *Muradin v.
Gonzales*, 494 F.3d 1208, 1209 (9th Cir. 2007) (order of removal existed
where "[a]lthough the IJ did not enter an order of removal or make an
explicit finding of removability, [the noncitizen] conceded removability
before the IJ," and "the IJ's grant of [CAT] relief necessarily requires the
IJ to have already determined [the noncitizen] is removable"); *Ali v.
Beers*, 988 F. Supp. 2d 89, 93 (D. Mass. 2013) ("despite failing to check
the box that 'respondent was ordered removed,'" the IJ "necessarily,

detention under Section 1231 is unlawful. And the respondents have not asserted any other statutory basis to detain the petitioner.

The respondents also now concede that (1) the petitioner has been in detention for over six months, (2) he "has come forward with evidence that he believes shows there is no significant likelihood of removal in the reasonably foreseeable future," and (3) they "do not have information to offer the Court regarding whether there is a significant likelihood that they will be able to remove Petitioner in the reasonably foreseeable future." Doc. 63 at 2. I agree with the petitioner that there is good reason to believe that there is no significant likelihood of removal to a third country in the reasonably foreseeable future. *See* Doc. 60 at 17-18; Doc. 54 at 9. And the respondents state they have no evidence to rebut the petitioner's showing. Thus, even if the petitioner's detention was initially lawful under Section 1231, it has since become unreasonably prolonged under *Zadvydas*, and he must be released. The respondents argue that any release should be subject to conditions of supervision, Doc. 63 at 3, but as the petitioner points out, that would only be appropriate if he were properly detained under Section 1231 and released pursuant to Section 1231(a)(3), Doc. 64 at 2. Because that is not the case, conditions of supervision on his release are not authorized.

---

made the finding that petitioner was deportable"); *Sapunxhiu v. Mukasey*, Civil Action No. 06-3975 (JLL), 2008 WL 360984, at \*4 (D.N.J. Feb. 8, 2008) ("an alien's concession of removability is enough to amount to a finding of removal by the IJ and a grant of discretionary relief like the one here necessitates an inherent finding of removability").

## CONCLUSION

It is **ORDERED** that:

The Court's Order to Show Cause, Doc. 62, is **MADE ABSOLUTE**, and Petitioner Hossein Batooie's Verified Amended Petition for Writ of Habeas Corpus, **Doc. 60**, is **GRANTED**;[9]

The respondents must immediately release Mr. Batooie from detention and file a status report within **one week** of this Order confirming he has been released;

The Temporary Restraining Order, Doc. 10, is **DISSOLVED**;

Petitioner's Opposed Motion for Release from Detention, **Doc. 51**, is **DENIED AS MOOT**;

Petitioner's Opposed Motion for Expedited Hearing and Consideration of Petition for Writ of Habeas Corpus, **Doc. 56**, is **DENIED AS MOOT**;

Any motion for attorney fees must be filed within **two weeks** of this Order; and

Pursuant to Federal Rule of Civil Procedure 25(d), the Clerk of Court is **DIRECTED** to: (1) substitute George Valdez, in his official capacity as Acting Field Office Director, U.S. Immigration and Customs Enforcement, in place of Respondent Robert Guadian; (2) substitute Markwayne Mullen, in his official capacity as Secretary, U.S. Department of Homeland Security, in place of Respondent Kristi Noem; and

---

[9]    Because habeas relief is granted for the reasons set forth above, I need not address the petitioner's other asserted grounds for such relief. *See Banks v. Dretke*, 540 U.S. 668, 689 n.10 (2004).

(3) substitute Todd Blanche, in his official capacity as Acting Attorney General, U.S. Department of Justice, in place of Respondent Pamela Bondi.

DATED: April 10, 2026    BY THE COURT:

Daniel D. Domenico
Chief United States District Judge